LAW OFFICES OF
# FREDERICK L. SOSINSKY
45 BROADWAY, 30th FLOOR
NEW YORK, NEW YORK 10006

———

TELEPHONE (212) 285-2270
TELECOPIER (212) 509-8403
EMAIL:  FredS@newyork-criminaldefense.com

November 4, 2008

<u>BY ECF AND FEDERAL EXPRESS</u>
Hon. Sandra L. Townes
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: United States v. Nicholas Santora, et al.
        <u>06 Cr. 0800 (S-4)(SLT)</u>

Dear Judge Townes:

  I submit this letter on behalf of Nicholas Santora, the defendant in the above matter, who is scheduled to be sentenced by Your Honor on November 7, 2008 at 10:30 a.m. following his conviction by plea of guilty to a violation of 18 U.S.C. §1962(c), the federal RICO statute. At the time of his guilty plea before Magistrate Judge Kiyo Matsumoto, which this Court accepted, and pursuant to a written plea agreement with the government, Mr. Santora allocuted to having participated in a RICO enterprise through his commission of two racketeering acts, an unlawful poker game and the extortion of a local business, respectively, racketeering acts 5 and 8B of Count One of the superseding indictment.

  Below, Mr. Santora respectfully notes his objections to the Presentence Investigation Report ("PSR") prepared by the Department of Probation, sets forth the "correct" advisory sentencing guidelines analysis applicable at bar, asks the Court for a further reduction in sentence down to 24 months incarceration due to his need for follow-up cardiac care which the BOP has been unable or unwilling to provide and requests that the Court not impose a fine due to Mr. Santora's inability to pay. A non-guidelines sentence of 24 months, we submit, is more than sufficient, but not greater than necessary, to accomplish the objectives of sentencing as set forth in 18 U.S.C. §3553(a)(2).

2

1. **Objections to the PSR**

*(a) Objection to Alleged Relevant Conduct:*

In Mr. Santora's PSR, the Probation Department includes, in the body of the report under the headings "Offense Conduct" (PSR ¶ 36-40) and "The Defendants' Participation" (PSR ¶ 66-71), as well as in its proposed sentencing guidelines analysis (PSR ¶ 132-162), certain conduct for which Mr. Santora had been charged by the government in its indictment, but for which he did not plead guilty and has not been convicted. [1]

The inclusion of this information in the PSR stands in stark contrast to the plea agreement entered into after extensive negotiations between Mr. Santora and the government, *and upon which Mr. Santora relied in deciding to enter his guilty plea,* in which the government agreed to an advisory sentencing guidelines calculation based *solely upon* the crimes for which Mr. Santora would plead guilty.

Since the time of the preparation of the PSR, the government has advised the Court in connection with every sentencing proceeding of a co-defendant had in this case to date, in substance, that with respect to relevant conduct to which the defendant in question did not plead guilty, the government "elects" not to offer proof of that conduct. According to their several submissions, the government takes this position "consistent with its plea agreement with the defendant, and for strategic reasons, including the desire not to expose cooperating witnesses and evidence at this time." (*See, e.g.*, Letters of the Government dated July 25, 2008 and September 17, 2008). Consistent with this practice, the government has advised me that they will take the same position herein. Accordingly, Mr. Santora objects to the PSR's reference in the above paragraphs to offense conduct for which he has not been convicted and asks that the Court strike such references from the PSR.

As a result of the non-consideration of this alleged conduct in determining the advisory guidelines applicable at bar, the Court must also adjust the offense level calculations employed by the Probation Department. This issue is dealt with below.

---

[1] Probation's inclusion of unconvicted "relevant conduct" in the PSR was not limited to Mr. Santora: each of the PSR's of Mr. Santora's co-defendants who were convicted of RICO offenses included consideration of such conduct.

3

### (b) Objection to Failure to Apply a Downward Adjustment or Departure or to Propose a Non-Guidelines' Reduction for the "Global Plea":

In his plea agreement, the government agreed that Mr. Santora -- and all of the defendants -- was entitled to a two-level reduction of his guidelines' offense level due to the *global disposition* reached with all nineteen of the defendants in this complex matter. Neither the parties' agreement to such a reduction of sentence under these unusual circumstances, nor acceptance of this stipulation by the courts of this district, is in any way unusual. *See, e.g., United States v. Garcia,* 926 F.2d 125 (2d Cir. 1991); *United States v. Agate*, 08 Cr. 76 (JBW)(approving of a three-level reduction for defendants in multi-defendant case); *United States v. Cannistraci*, 05 Cr. 842 (ARR)(approving of a two-point reduction for participation in a multi-defendant disposition); *United States v. Abramor*, 04 Cr. 1041 (SLT)(awarding a two-point global reduction in multi-defendant RICO prosecution); *United States v. Baudanza*, 06 Cr. 181 (RJD)(approving a one-point global reduction as set forth in plea agreement).

Notwithstanding the recognized utilization of this practice in these courts, in its PSR, Probation takes the stance that such an adjustment, or downward departure, is inappropriate (PSR, ¶ 3). Moreover, nowhere does the PSR otherwise suggest that the Court could or should impose a non-guidelines' sentence in accordance with the parties' agreement to a sentence reduction on this basis.

The government has already, in each of the prior sentencing proceedings in this case, written to the Court and otherwise reaffirmed its position that a two-point reduction of sentences for this global disposition -- a bargained-for byproduct of the collective efforts over an extended period of time of the parties so as to conserve valuable resources and to ensure the closure of this complex matter -- is indeed appropriate. And the Court has, in each of the prior sentences imposed on a co-defendant in this case, in fact lowered its sentence in accord with the parties' agreement to a *global disposition* reduction. The Court has done so, in each of these proceedings, by determining that the defendant be sentenced to a *non-guidelines sentence* which, in practice, results in a two-level reduction of the advisory guidelines range otherwise found to be applicable.

Regardless of how the Court does so -- whether by adjusting or departing downward two levels from the advisory sentencing guidelines as the plea agreement provides for, or by varying from these guidelines via a non-guidelines' sentence -- since the PSR fails to provide for a reduction in

4

sentence based upon this global disposition, Mr. Santora objects to this omission.

## 2. The Correct Advisory Sentencing Guidelines Analysis

The plea agreement reached accurately sets forth the appropriate advisory guidelines calculations for Mr. Santora.

After applying a four-point role enhancement to the total adjusted offense level of 19, Mr. Santora's adjusted offense level is 23. Based on a three-level *acceptance of responsibility* downward adjustment, Mr. Santora's advisory guidelines range is reduced to a level 20. Finally, based upon the *global disposition* reached, as discussed above, Mr. Santora is entitled to a reduction of his sentence by an additional two-points.[2] Thus, the plea agreement provides for a total adjusted guidelines level of 18 for Mr. Santora. Level 18 carries a range of imprisonment of 30-37 months as Mr. Santora is within Criminal History Category II.

As discussed above, the PSR references in its guidelines' analysis certain offense conduct for which Mr. Santora did not plead guilty and has not been convicted. The government does not seek inclusion of this conduct in the guidelines' analysis and has represented that they will not offer evidence to do so. Thus, paragraphs 147 through 152 and 156 of the PSR should be struck, paragraph 157 of the PSR should be amended to reflect that the total number of "units" as referred to in U.S.S.G. § 3D1.4 is reduced to 1 ½, and paragraph 159 of the PSR should be amended to reflect only a one point increase under the same guidelines provision. Doing so results in a guidelines' calculation resulting in a total offense level of 20, just as in the plea agreement, before further reduction for the *global disposition*.[3]

---

[2] Mr. Santora has no objection, quite obviously, if the Court finds that the two-level reduction for *global disposition* is more appropriately imposed as a non-guidelines variance, rather than a guidelines adjustment or departure.

[3] The PSR suggests application of the four-level role adjustment to each of the two racketeering acts *before* determining the combined offense level. The plea agreement applies the role enhancement *after* computation of the combined offense level. Both calculations result in a total offense level of 20, and the plea agreement contemplates the further two-level reduction for the *global disposition*.

5

### 3. Due to the Need for Mr. Santora To Obtain Necessary Follow-Up Care for his Largely Unmonitored Cardiac Condition, in Considering All of the § 3553 Factors, the Court Should Impose A Non-Guidelines Sentence of 24 Months Imprisonment

As the Court is aware, Mr. Santora, who is 66 years old, underwent triple bypass cardiac surgery at St. Francis Hospital on Long Island on December 21, 2006. As the PSR indicates, this emergency coronary artery bypass involved "grafting with a left internal mammary artery to the left anterior descending and a reverse saphenous vein graft to the first diagonal and second marginal" (PSR ¶ 200). Mr. Santora was undergoing follow-up care with his cardiologist, Dr. Edward Davison, just six weeks later, when he was arrested in connection with this case.

From the time of his arrest on February 6, 2007 until mid-March 2007, Mr. Santora provided the Court with substantial evidence in the form of letters, sworn affidavits and proffered testimony from Dr. Davison and another medical expert in an effort to demonstrate that as a cardiac care patient in the early stages of recovery from open heart surgery, Mr. Santora desperately needed -- and the MDC was incapable of providing -- adequate and ongoing cardiac care and that deprivation of this care could lead to grave medical consequences. On March 15, 2007, in the context of the governments' application for denial of bail, the Court determined that continued pretrial detention of Mr. Santora was appropriate and that, notwithstanding his medical condition, the MDC could provide necessary medical care to him.

Unfortunately for Mr. Santora, the Court's faith in the treatment that could be provided to a patient recovering from this type of invasive and life-threatening procedure has not been rewarded. Attached hereto as Exhibit A are Mr. Santora's medical records obtained by court-order from the MDC. While Mr. Santora was permitted to be seen by a board-certified cardiologist, Dr. Ira Schulman, at New York University Downtown Hospital about two weeks after the Court issued its decision denying bail (March 30, 2007), since then -- *a period of more than 19 months* -- Mr. Santora has not again been seen by a cardiologist. This is so even though Dr. Schulman wrote in his report to the MDC physician who referred Mr. Santora to him that he *"would like to see [Mr. Santora] once again in approximately four months for followup should he remain at the Metropolitan Detention Center."* See Report of Dr. Ira Schulman, dated March 30, 2007, included as part of Exhibit A. As the medical records show, despite being seen a number of times by the medical staff at the MDC and the staff being aware that Mr. Santora was a cardiac patient, no attempt to comply with Dr. Schulman's sound medical advice was undertaken. To this date, other than when he was hospitalized for a week's-time at Lutheran Medical Center with acute cardiac problems in early March 2007 and his single visit two weeks later to Dr. Schulman, Mr. Santora has not seen a cardiologist. According to all of the previously proffered evidence concerning the standard of care for such patients

6

under such circumstances, and, we submit, common sense and experience, the MDC's failure to follow-up with continued cardiac care -- as urged by Dr. Schulman -- establishes that adequate care has not been and cannot be provided. More to the point, given the high stakes involved in failing to monitor and treat a cardiac patient properly, as long as he remains incarcerated, Mr. Santora remains at risk of suffering tragic consequences.

While it is true that since March of last year, Mr. Santora has not again been hospitalized, as his own treating physician has advised the Court previously:

> "For a post-operative by-pass patient, the lack of immediate access to a cardiologist is dangerous. For by-pass patients, common etiologies for symptoms other than chest pains, such as dizziness, lightheadedness, shortness of breath, or fatigue are are (sic) stroke, myracardial infarction, cardiac arrest, syncopy or pulmonary embolism. Such symptoms would not normally be recognized as emergencies by lay persons or even medical professionals whose practice does not include cardiology. Days may go by before the emergency is recognized and the patient is taken to the emergency room by which time it is too late."

Declaration of Edward Davison, MD, dated March 3, 2007, previously submitted to the Court in connection with the government's motion for detention. Simply put, it is more a result of luck than sound medical care that permits Mr. Santora to be here today to be sentenced.

At bar, where despite sound medical advice, the MDC has failed to provide Mr. Santora with the follow-up care that is called for, the Court can and should reduce the sentence imposed to 24 months so as to ensure that Mr. Santora receives such critical care. The sentence requested in only six months less than the bottom of the applicable advisory guidelines' range agreed to by the parties.

### 4. **Mr. Santora's Personal History and Circumstances**

Mr. Santora is 66 years years old. He was born, raised and educated in Brooklyn, New York. Unfortunately, his mother died from an intestinal disorder when Mr. Santora was a young man and his father was killed during the course of a burglary of the family's home some 25 years ago. Mr. Santora's younger brother died from heart failure twenty years ago. He has one sister who resides in Florida.

7

The pride and joy of Mr. Santora's life are his three daughters, Elizabeth (45), the owner of a commercial sign company, Tina (44) , a married homemaker who lives in Florida, and Gina Armenia (36), the successful owner/operator of a specialty foods business, and his seven grandchildren.  Mr. Santora spends as much time as possible with his family and his daughter's sense of support and loyalty towards their dad is evident from a review of the PSR.

Luckily, Mr. Santora, who has been divorced for close to 30 years, found love about 4 years ago, in the person of Ava Handler, a 45 year old secretary who resides here in the City of New York and with whom he plans again to reside with upon his release.  Mr. Santora and Ms. Handler are engaged and plan to marry shortly after Mr. Santora returns to the community.

As the PSR describes, Mr. Santora worked all of his life in the marketing, trucking and construction industries, until about 2002, when he retired.

### 5. Mr. Santora is Unable To Pay a Fine

As the PSR reports, Mr. Santora possesses no assets, and has been unemployed for some time. He receives Social Security benefits and is provided with financial assistance from his three daughters.  The PSR also reports that based upon these circumstances, Mr. Santora is unable to pay a fine. Accordingly, we ask that no fine be imposed.

### 6. Conclusion

For all of the reasons discussed above, the Court should impose a sentence of no more than 24 months incarceration. This sentence, after careful consideration of each of the factors present in 18 U.S.C. §3553, is more than sufficient, but not greater than necessary, to promote the objectives of sentencing and will afford Mr. Santora the opportunity to finally receive the medical care he needs.

8

Thank you for your consideration.

                                      Respectfully submitted,

                                                 /s/

                                      Frederick L. Sosinsky

FLS:bms
cc: Winston Chan, Esq. (by ECF and Federal Express)

Encl. (med. records in courtesy copy only)